IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GORDON L. MILLER, ) | CASE NO. 3:08-CV-46 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Gordon L. Miller, for disability insurance benefits. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Miller had severe impairments consisting of degenerative joint disease of the left ankle with ankle fusion and revision ankle fusion, bilateral hip and knee arthritis, degenerative disc disease, spondylolisthesis at L4-5, and obesity.[1] The ALJ determined that Miller did not have an impairment or combination of impairments that meet or medically equal one listed in Appendix 1 of the regulations.[2] The ALJ made the following finding regarding Miller's residual functional capacity:

---

[1] Transcript ("Tr.") at 26.

[2] *Id.*

> Specifically, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.[3] He requires the opportunity to sit while working and stand briefly, occasionally. His relevant impairments would prevent standing and walking more than 25% of the eight-hour workday. He cannot reach extreme postures (stooping, kneeling, bending, etc.) more often than occasionally. The claimant cannot work overhead.

The ALJ decided that the above-quoted residual functional capacity did not preclude Miller from doing his past relevant work as a sales representative, office manager, and case worker, as those jobs are performed in the national economy.[4]

Alternatively, based on a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Miller could perform.[5] He, therefore, found Miller not under a disability.[6]

Miller asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Miller presents three issues for determination in this case:

- Does substantial evidence support the finding that Miller's impairments do not satisfy the listing requirements in §§ 1.02 or 1.03 of Appendix 1?

- Did the ALJ improperly fail to give controlling weight to the opinion of the Veteran's Administration Chief of Orthopaedics, J. Miller, M.D.?

---

[3] *Id.* at 28.

[4] *Id.* at 30.

[5] *Id.* at 31.

[6] *Id.*

- Does substantial evidence support the ALJ's finding that Miller had the residual functional capacity to perform a restricted range of sedentary work?

I conclude that substantial evidence does not support the finding that Miller did not meet the requirements of listing §§ 1.02 or 1.03. The case, therefore, must be remanded for further proceedings.

## Analysis

**1. Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[7]

---

[7] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[8] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[9]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     Joshua Miller, M.D. as a treating source whose opinion is entitled to controlling weight**

Although Miller lists the failure to give controlling weight to the opinion of Joshua Miller, M.D. as his second issue, I will discuss it first because of its importance to the other two issues.

Dr. Miller is or was the Chief of Orthopaedics at the Veterans Affairs Medical Center in Ann Arbor, Michigan, where Miller received treatment. He provided two opinions in this case.[10] Miller relies heavily on these opinions in support of his arguments that he met listings and had a residual functional capacity less than that found by the ALJ.

---

[8] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[9] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[10] Tr. at 176 (December 8, 2003) and 425-28 (July 28, 2005).

The regulations of the Social Security Administration require the Commissioner to give more weight to the opinions of treating sources than those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or for reports of individual examinations, such as consultative examinations or brief hospitalizations.[11]

If such opinions are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in [the] case record," then they must receive "controlling" weight.[12]

Miller has cited two social security rulings in support of his position that Dr. Miller should be considered a treating source and his opinions assigned controlling weight, despite the fact that he is one of multiple physicians involved with Miller's care through the VA Medical Center. The first, Social Security Ruling 96-7p,[13] addresses the credibility of an individual's statements about pain and its functional effects. It states that, in assessing credibility, records of medical professionals not considered treating sources, such as clinic

---

[11] 20 C.F.R. § 404.1527(d)(2).

[12] *Id.*

[13] Social Security Ruling ("SSR") 96-7p: Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

records, may provide a longitudinal history of complaints relevant to the credibility inquiry.[14] The second ruling, Social Security Ruling 82-59,[15] states that a treating source for purposes of assessing compliance with prescribed treatment may include a physician in a hospital, clinic, or other medical facility where an individual goes for medical care.[16] These rulings only tangentially bear on the issue of whether Dr. Miller should be considered a treating source whose opinion qualifies for controlling weight.

More to the point and relevant here are the specific factors identified in the applicable regulation. Section 404.1527(d)(1) provides that "we give more weight to the opinion of the source who has examined you than to the opinion of a source who has not examined you." Section 404.1527(d)(2)(i) provides that "the longer a treating source has treated you and the more times you have been seen by the treating source, the more weight we will give to the source's medical opinion."

Both of the opinions signed by Dr. Miller appear to have been prepared by James McCormick, a physicians assistant, for Dr. Miller's signature.[17] I have done an extensive and careful review of the VA records in the transcript[18] and find that the references

---

[14] *Id.* at 61 Fed. Reg. at 34487.

[15] SSR 82-59: Titles II and XVI: Failure to Follow Prescribed Treatment, available at http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR82-59-di-02.html.

[16] *Id.*

[17] Tr. at 176, 426-28.

[18] *Id.* at 176, 287-365, 366-414, 426-28, and 429-31.

-6-

to Dr. Miller are sparse. On July 9, 2003, he ordered x-rays.[19] On September 16, 2003, he acknowledged receipt of a report prepared by McCormick, the physician's assistant.[20] In October of 2003, he ordered radiological studies on three occasions,[21] and he signed an addendum to an orthopaedic note of September 16, 2003, which addendum was dated November 12, 2003.[22] None of these references have definitively evidenced that Dr. Miller actually examined plaintiff Miller.

Given this documentation, I cannot find error with the ALJ's decision not to give Dr. Miller's opinion controlling weight under the standards set out in the regulations. I note, nevertheless, that the ALJ did give some weight to those opinions because he assigned Miller a much reduced residual functional capacity.

Dr. Miller's opinions as they relate to the other issues in this case will be discussed more fully below.

**3.     Listing §§ 1.02 and 1.03 and Miller's alleged inability to ambulate effectively**

As counsel agreed during the oral argument in this case, the issue of whether or not Miller met the requirements of the listings in §§ 1.02 and 1.03 depends upon whether he had an "inability to ambulate effectively," as defined in § 1.00B2b. Section 1.00B2b(2) defines "to ambulate effectively" in functional terms:

---

[19] *Id.* at 409.

[20] *Id.* at 372.

[21] *Id.* at 412-14.

[22] *Id.* at 376.

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.[23]

At step three of the sequential evaluation process, the claimant bears the burden of proof that all the requirements of the listing are present.[24]  The ultimate determination of whether the claimant has met the listing rests with the Commissioner, and the Commissioner is not bound by a treating physician's conclusory statement that the claimant's impairment has satisfied the listing requirements.[25]

Here, Miller argues that substantial evidence supports a decision in his favor at step three because Dr. Miller has opined that he is unable to ambulate effectively.  As stated above, however, the ALJ's decision that Dr. Miller is not a treating source has the support of substantial evidence.  Further, Dr. Miller's report is conclusory and does not address the functional components of inability to ambulate effectively set out in § 1.00B2b(2).

---

[23] Emphasis in the original.

[24] *Berry v. Comm'r of Soc. Sec.*, 34 F. App'x 202, 203 (6th Cir. 2002).

[25] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).

This does not, however, resolve this issue.  I have carefully reviewed this record, particularly as highlighted in the briefs and charts of the parties, and can find virtually no evidence regarding Miller's ability to ambulate effectively, as that phrase is functionally defined in the regulations.  I am mindful that Miller bears the burden of proof at this step of the sequential evaluation process.  Nevertheless, the ALJ's finding that Miller did not meet or equal the listings must have the support of substantial evidence in the administrative record.  And the ALJ does have a duty to develop an adequate administrative record.[26]

Here, I simply cannot find substantial evidence supporting the ALJ's finding at step three.  Such evidence could have come by way of an opinion of a medical expert,[27] but the ALJ did not call one.  The two state agency reviewing physicians who did residual functional capacity assessments in 2003 based on review of the medical records did so without the benefit of Dr. Miller's report and without the benefit of two years of additional medical records.[28]  Furthermore, neither offered an opinion on the listing requirements.

Nor do I find the Disability Determinations and Transmittals completed in 2003 in this case by state agency physicians adequate to support the step three finding, even though they make a finding of not disabled and presumptively a finding that no listing was met or

---

[26] *Deskin v. Comm'r of Soc. Sec.*, ___ F. Supp. 2d ___, 2008 WL 5744118, at *2 (N.D. Ohio Mar. 31, 208).

[27] *E.g.*, *Cline v. Astrue*, 577 F. Supp. 2d 835, 842, 847 (N.D. Tex. 2008).

[28] Tr. at 193-97, 252-57.

equaled.[29] As with the state agency residual functional capacity assessments, these determinations were made without the benefit of two years of additional medical records and the opinion of Dr. Miller that plaintiff Miller did not have the ability to ambulate.

I note that the ALJ expressed some concern at the hearing that Miller might meet a listing and invited counsel to provide supplemental medical documentation.[30] In fact, counsel did provide such additional documentation, although as discussed above, the ALJ properly concluded that it did not resolve the listing inquiry. Given the paucity of evidence going to the regulations' detailed functional description of inability to walk, this is a case where the ALJ should have exercised his discretion to obtain the opinion of the medical expert.[31]

Finally, Miller challenges the residual functional capacity finding on the ground that it overstated his ability to walk and stand in an eight-hour day and should have, at a minimum, included a sit/stand option. Since on remand the ALJ will take additional

---

[29] *Id.* at 37-38.

[30] *Id.* at 538.

[31] The ALJ at the hearing stated that "it seems to me that this is a condition that might satisfy a listing, but I don't believe that evidence carefully addresses all features of the listing." Tr. at 538. Despite this concern, the ALJ disposed of the step three inquiry in one conclusory sentence and failed to give any meaningful explanation for his findings. This precludes any meaningful judicial review. As the court recently observed in *Waits v. Comm'r of Soc. Sec.*, No. C-1-06-589, 2008 WL 4276539, at *13 (S.D. Ohio Sept. 11, 2008), the ALJ's duty to giving a meaningful explanation of his findings in the context of step three "means that the ALJ must compare each listed criteria with the evidence." Had the ALJ done so here, he should have concluded that insufficient evidence existed for a determination of whether or not Miller could ambulate effectively as the regulations define that term.

evidence of Miller's capability to walk, he should reconsider the residual functional capacity finding in light of that evidence, assuming that the analysis proceeds beyond step three.

## Conclusion

Based on the foregoing, the decision of the Commissioner denying Miller's application for disability insurance benefits is reversed and the case remanded for reconsideration of the finding at step three of the sequential evaluation process (and, if necessary, steps four and five) with the assistance of an opinion of a medical expert.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[32] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated: March 31, 2009       s/ William H. Baughman, Jr.
                            United States Magistrate Judge

---

[32] 28 U.S.C. § 2412(d)(1)(A).